Cite as 2024 Ark. App. 413

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-24-201

|  |  |
|---|---|
| BERNICE COSTON<br><br>             APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>             APPELLEES | **Opinion Delivered** September 11, 2024<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT<br>[NO. 26JV-22-290]<br><br>HONORABLE LYNN WILLIAMS, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

## BRANDON J. HARRISON, Chief Judge

Bernice Coston appeals the order terminating her parental rights to her child, MC1.[1] Coston's counsel has filed a no-merit brief and motion to withdraw as counsel pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Ark. Sup. Ct. R. 6-9(j) (2023). The clerk of this court delivered a copy of counsel's brief and motion to withdraw to Coston, advising her of her right to file pro se points for reversal pursuant to Ark. Sup. Ct. R. 6-9(j)(3), and she has done so. We affirm the termination and grant counsel's motion to withdraw.

On 26 September 2022, the Arkansas Department of Human Services (DHS) received a referral from the child-abuse hotline alleging sexual abuse of nine-year-old MC2.

---

[1]There are two children in this case, MC1 and MC2, who are half siblings. Both children lived with Coston and their biological father, William Coston. MC1's biological mother is Coston, and MC2's biological mother is Holly Phillips. The court terminated the parental rights of all three parents, but this appeal relates only to Coston and MC1.

The alleged offenders were Coston and her husband, William. DHS transported MC2 to the Child Advocacy Center for an interview and reviewed its database for any history with the family. That review revealed multiple sexual-abuse referrals involving MC2 as the alleged victim and Coston and her husband as the alleged offenders. DHS also learned that William had called a relative and left a voicemail confessing to the allegations and claiming that Coston was also guilty. DHS determined that MC1, who was two and a half years old, and MC2 were in imminent danger and exercised a seventy-two-hour hold. The next day, police interviewed Coston and charged her with one count of rape. Coston was also later charged with first-degree endangering the welfare of a minor with MC1 as the victim.

On 29 September 2022, DHS filed a petition for dependency-neglect, which was granted that same day. On October 10, the circuit court entered an agreed order in which the parents stipulated that probable cause existed to remove the children and that it was necessary for the children remain in DHS custody. Coston later stipulated that the children were dependent-neglected based on her parental unfitness due to substance abuse and her failure to protect MC2 from sexual abuse.

The court reviewed the case in April 2023 and noted that Coston was still incarcerated at the Garland County Detention Center. In June 2023, DHS moved to terminate reunification services and argued that the children had been subjected to aggravated circumstances and that Coston had been incarcerated since the time of removal with no indication she will be released any time soon.

The circuit court reviewed the case again in July 2023 and denied the motion to terminate reunification services. The court again noted, however, that Coston was still

incarcerated at the Garland County Detention Center. In September 2023, the court entered a permanency-planning order that changed the goal of the case to adoption with DHS filing a petition for termination of parental rights. The order recited that Coston had been incarcerated during the pendency of the case; that due to the nature of the crime for which Coston was incarcerated, the detention center would not offer services; and that there was a no-contact order in place preventing Coston from having contact with the children.

DHS filed a termination petition on 5 October 2023. As statutory grounds for terminating Coston's parental rights, DHS cited failure to remedy, dependency-neglect as a result of sexual abuse, subsequent factors, and aggravated circumstances. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*), (vi)(*a*), (vii)(*a*), and (ix)*(a)(3)*.

The circuit court held a termination hearing on 13 December 2023. Corporal Don Yoak with the Garland County Sheriff's Department testified that on 27 September 2022, William had confessed to forcing MC2 to smoke methamphetamine and perform sexual acts on him and Coston. Coston was also interviewed and confirmed William's confession. She also explained that these acts occurred in a camper while MC1 was in an adjacent bedroom. Both parents also admitted using methamphetamine and marijuana in MC1's presence.

Jamie Moran, the DHS caseworker, testified that Coston had been able to complete a few services while she was in jail including working on her GED, some parenting classes, and some Celebrate Recovery classes for her addiction issues. DHS could not locate any counseling providers or sexual-offender-treatment providers that would come into the jail and work with the parents. She said the parents had not remedied the conditions that caused removal and that the children needed permanency.

3

Susan Miller, an adoption specialist, testified that the children are adoptable, that they would be adopted together, and that she had identified eighty-four potential adoptive families.

Coston testified that she had completed all available services at the jail and that she was working on her GED. She said that she had completed several courses, including Workforce Preparation, Celebrate Recovery, Parenting Life Skills, and Employment Life Skills.

The circuit court ruled from the bench that it was in the best interest of the children to terminate parental rights and proceed to adoption. In its written order, the court based the termination of parental rights on Coston's failure to remedy the conditions that prevented the children from being safely placed in her care. The court noted that there was no evidence that Coston had made progress on the case plan and that the "severe nature of the crimes committed against the juveniles speaks to the reasons the juveniles cannot be returned home." The court's order also made findings on the children's best interest, explaining that the children are adoptable and that they would be subjected to potential harm if returned to the parents "because there is no evidence that there has been any substantial change in the parents' situation since the removal." Coston filed a timely notice of appeal from the circuit court's order.

A circuit court's order terminating parental rights must be based upon findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2023). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't*

*of Health & Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility. *Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). Only one ground is necessary to terminate parental rights. *Id.*

Arkansas Supreme Court Rule 6-9(j)(1) allows counsel for an appellant in a termination case to file a no-merit brief and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal. The brief must include an argument section that includes all circuit court rulings that are adverse to the appellant on all objections, motions, and requests made by the party at the hearing from which the appeal arose and an explanation why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(j)(1)(A). Additionally, the brief's statement of the case and facts must contain all rulings adverse to the appellant made by the circuit court at the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(j)(1)(B). In evaluating a no-merit brief, the issue for the court is whether the appeal is wholly frivolous or whether there are any issues of arguable merit for appeal. *Linker-Flores*, *supra*.

5

To terminate parental rights, a circuit court must find clear and convincing evidence as to one or more of the grounds for termination listed in Ark. Code Ann. § 9-27-341(b)(3)(B). *Trogstad v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 443, 609 S.W.3d 661. The circuit court must also find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).

In her no-merit brief, counsel asserts that after a conscientious review of the record, she has determined that there are no issues of arguable merit for appeal. Counsel contends that there is "no meritorious defense to the sexual abuse and aggravated circumstances grounds pled by DHS in its Petition for Termination of Parental Rights." Counsel argues that there is ample evidence to support the court's aggravated-circumstances finding, and because only one ground is needed for termination, any argument regarding the remaining grounds is moot.

Contrary to counsel's assertion, the circuit court did not make a finding of aggravated circumstances, though it surely could have done so on this record. Instead, the court terminated parental rights on the failure-to-remedy ground. However, in a termination-of-parental-rights case, we may affirm by addressing a statutory ground that counsel has omitted from her brief. *See Houseman v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 227, at 10, 491 S.W.3d 153, 160 (permitting counsel to withdraw even though counsel's no-merit brief failed to address the subsequent-factors ground that pertained to one child; "Although

6

counsel has not discussed this ground, testimony in the abstract to her brief addresses it."). Even if an adverse ruling is omitted from a no-merit brief in a termination case, we may affirm if the ruling would clearly not constitute a meritorious ground for appeal. *Hughes v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 526. This is because in termination cases, "through de novo review for clear error, the appellate court will review all of the evidence presented for error, resolving all inferences in favor of the appellee." *Sartin v. State*, 2010 Ark. 16, at 7, 362 S.W.3d 877, 881 (citing *Dinkins v. Ark. Dep't of Hum. Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001)).

So we focus on the circuit court's finding that DHS proved by clear and convincing evidence the statutory ground of failure to remedy. The court found that the children had been removed from the home of William Coston and Bernice Coston and had remained out of the home for a period longer than twelve months; that the children had been adjudicated dependent-neglected due to Coston's parental unfitness, specifically her substance abuse and her failure to protect MC2 from sexual abuse; that Coston faced criminal charges relating to both MC1 and MC2; and that there was no evidence that she had made progress on the case plan. After conducting a de novo review of all the relevant evidence, we conclude that the circuit court did not clearly err in relying on the failure-to-remedy ground to terminate Coston's parental rights.

Concerning best interest, counsel notes that DHS provided testimony that the children are adoptable, and this court has held the testimony from a DHS worker that a child is adoptable is sufficient to support an adoptability finding. *Solee v. Ark. Dep't of Hum.*

7

*Servs.*, 2017 Ark. App. 640, 535 S.W.3d 687. Thus, counsel asserts, there can be no meritorious challenge to the circuit court's adoptability finding.

Counsel also argues that the circuit court had sufficient evidence to find that MC1 faced potential harm if returned to Coston's care. In addition to Coston's drug use in front of the children and her sexual abuse of MC1's sibling, Coston was incarcerated throughout the case and thus unable to care for MC1 or provide for his needs. Based on this evidence, counsel contends that there can be no meritorious challenge to the circuit court's potential-harm finding and concludes that the facts supporting potential harm, in conjunction with the evidence of the child's adoptability, provided sufficient evidence for the circuit court to find that termination of Coston's parental rights was in the child's best interest.

Counsel also discusses several rulings that she categorizes as adverse to Coston. During Corporal Don Yoak's testimony, defense counsel objected to a question about Coston's police interview and confession, arguing, "We've already had an adjudication on this." Defense counsel agreed to stipulate to the facts provided at adjudication, but other parent counsel did not agree, so the objection was overruled. On appeal, counsel explains that Coston cannot demonstrate prejudice from the objection being overruled because she had "agreed to stipulate to the adjudication findings predicated on the same facts as the officer's testimony."

Next, counsel examines two other rulings: the denial of Coston's motion for transport to a psychological evaluation and the circuit court's ruling that there would be no final visit between Coston and MC1. As explained above, Ark. Sup. Ct. R. 6-9(j)(1)(A) requires that counsel list all adverse rulings to the appellant made by the circuit court on all

8

objections, motions, and requests made by the party at the hearing from which the appeal arose and explain why each adverse ruling is not a meritorious ground for reversal. Coston's motion for transport occurred in August 2023 and is not a request made at the hearing from which the appeal arose. Further, Coston did not request a final visit with MC1, so the court's ruling that no final visit would occur was not adverse.

Finally, Coston's pro se points do not argue for a reversal; they instead generally state, "I would like any and all help on this case." In a joint response, DHS and MC1 describe Coston's assertion as "conclusory" and without merit. We agree.

Having reviewed the record, counsel's brief, and Coston's pro se points, we hold that the circuit court had sufficient evidence to find that it was in MC1's best interest for Coston's rights to be terminated and that statutory grounds for termination existed. Thus, we grant counsel's motion to withdraw and affirm the termination of Coston's parental rights.

Affirmed; motion to withdraw granted.

ABRAMSON and BARRETT, JJ., agree.

*Dusti Standridge*, for appellant.

*Demarcus D. Tave*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.

9